OPINION
{¶ 1} Jon Devol is appealing the trial court's conviction and sentence for one count of felonious assault with a deadly weapon.
 {¶ 2} On July 26, 2002, Devol was indicted on one count of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2). A bench trial was held on November 18 and 19, 2002. The following evidence was adduced at trial:
 {¶ 3} On the afternoon of July 2, 2002, Christopher Brock and Joseph Hoff went to Binger's Bar in Dayton, Ohio. The two men had met at the St. Vincent de Paul homeless shelter where they had been temporarily residing. Earlier that day, Brock donated plasma and received money, with which he purchased a fifth of gin. At Binger's, the men drank the gin, played darts and shot pool.
 {¶ 4} Devol entered Binger's at approximately 3:45 p.m. He approached Brock and Hoff and conversed with them about their life situations. Upon learning that the men were homeless, Devol spoke of his own past homelessness and encouraged them to get their lives in order. At some point, Devol invited the men to his home for food and more alcohol, and to talk more about their futures. Knowing that they had missed the deadline to check into the St. Vincent hotel for the night, the men accepted Devol's invitation. The three left in Devol's white Chevrolet Cavalier.
 {¶ 5} Devol and Hoff testified that the three proceeded to another bar, however as Hoff did not have his identification, they did not stay there. Instead, they went to Devol's apartment at the Meadows of Catalpa.
 {¶ 6} At Devol's apartment, the men grilled food and sat on the patio, engaging in casual conversation about their life stories for more than an hour. At some point, Hoff went to the living room to watch television. Devol and Brock remained outside.
 {¶ 7} Brock entered the house to use the bathroom. As Brock exited the bathroom, Devol approached him and pulled him into his bedroom. At this time the versions of the stories differ drastically. According to Brock, once they were inside Devol's bedroom, Devol restrained him, kissed him, and attempted to rape him. A struggle ensued, and Brock broke free. He ran into the living room and yelled for Hoff, "Wake up! This guy is trying to rape me, trying to have sex with me! Come on, let's get out of here so we can call the police!" The two ran from the apartment and into the parking lot, with Brock explaining to Hoff what had just transpired.
 {¶ 8} While walking through the parking lot, Brock heard Hoff shout "Watch out!" Upon turning around, Brock saw Devol's automobile driving directly at him. The car hit Brock; Brock flipped over the hood of the car and landed on the concrete. Hoff watched as Devol left the apartment complex at a high rate of speed.
 {¶ 9} Devol's version of events was significantly different. Devol testified that Brock and he remained outside on the patio after Hoff entered the apartment to watch television. During their conversation, Brock told Devol that he was bisexual, but that he did not want Hoff to know that fact.
 {¶ 10} When Brock arose to use the bathroom, Devol followed him into the house. Upon exiting the bathroom, Devol met him in the hallway and the two men made physical contact. The men proceeded into Devol's bedroom, where Brock motioned for Devol to close the door. The two began kissing, with Devol laying on top of Brock. Brock indicated to Devol that he would be interested in having sex with Devol for money. Devol told Brock that he was not going to pay for sex, and that the mood was "lost" by its very mention. Devol claims that Brock had a panic attack, and told Devol that he was still interested in having sex with Devol, but that he wanted Devol to use a condom. When Devol expressed that he no longer wished to have sex, Brock bolted from the room. As Brock and Hoff left the apartment, Brock screamed at Devol that he was not going to have sex with him, and called him derogatory homosexual names.
 {¶ 11} Devol, who had recently moved into that apartment and did not wish to be evicted, became concerned at the amount of commotion that Brock and Hoff were making. Devol followed them out of the apartment to ensure that they left the property. Devol met up with the two by the parking lot and tried to calm them down. Devol determined that he would have to drive the men to a different location, and he returned to his apartment to retrieve his keys. As he was searching for his keys, Devol heard noise coming from outside the apartment, which led him to believe that Brock and Hoff were doing damage to his automobile. He quickly exited his residence, entered his car, and approached Brock and Hoff in the parking lot. Devol stopped the automobile and asked Brock and Hoff to get inside the vehicle so that he could transport them somewhere. Instead, Brock walked to the driver's side and began pounding on the hood of the car. According to Devol, to prevent Brock from further damaging his automobile, Devol "abruptly" moved his automobile by stepping on the gas then quickly braking. At the same time, Brock pushed off the car, however he did not fall. Devol claims he exited the automobile and invited Brock and Hoff back up to his apartment to finish the food they had prepared, but Brock again began hitting the automobile. Angry from the altercation and from the damage done to his car, Devol sped out of the parking lot.
 {¶ 12} Tabitha Gaines, another resident of the apartment complex, testified at trial. She stated that she did not know any of the three men whom she saw in the parking lot of her apartment building on that evening when she went to take her trash out to the dumpster. She observed Hoff and Brock, and witnessed Brock making comments about someone being gay and trying to have sex with him. She passed the three men as she returned to her apartment. Curious about the altercation, she returned to the same area a couple minutes later, but saw no one. She could hear voices, and soon thereafter watched as a white car erratically sped out of the complex.
 {¶ 13} Brock was transported to Good Samaritan Hospital. Brock suffered from "road rash," and numerous scrapes on his arms and legs, a sprained leg, and was bleeding from his injuries. Later that evening Devol returned to the complex and was arrested. Evidence technicians arrived at the complex and took photographs of Devol's automobile and recovered a watch on the concrete that Brock had been wearing when he left Devol's apartment.
 {¶ 14} Devol was convicted of felonious assault with a deadly weapon, and sentenced to two years incarceration. He now appeals, asserting one assignment of error:
 {¶ 15} "The verdict of the trial court was against the manifest weight of the evidence[.]"
 {¶ 16} Devol asserts that Brock's and Hoff's versions of the events were incredible and unbelievable, and that their testimonies were inconsistent as compared to each other's and to Devol's testimony. Based upon this, Devol asserts that the trial court's findings were not credible and his conviction was against the manifest weight of the evidence.
 {¶ 17} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 18} Furthermore, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716, 709 N.E.2d 551 (citation omitted). The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371,377, 692 N.E.2d 1072.
 {¶ 19} In the case sub judice, Devol fails to point to any evidence establishing that the trial court's decision was a manifest miscarriage of justice. While many inconsistencies exist in Brock's and Hoff's testimonies, Devol's trial counsel adequately cross-examined both Brock and Hoff regarding many of these inconsistencies. This placed the credibility of their testimonies before the trial court. After observing Brock's and Hoff's testimonies on direct-examination and cross-examination, the trial court chose to believe their statements were credible. As a reviewing court, we must defer to that decision of the trial court.
 {¶ 20} Furthermore, the inconsistencies which Devol sets forth do not go to the material elements of felonious assault. To the contrary, we have no problem finding extensive evidence to support the guilty verdict on the felonious assault with a deadly weapon. R.C. 2903.11(A)(2) provides that a person commits felonious assault when he "knowingly * * * [c]ause[s] or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The State alleged that Devol hit Brock with his automobile, in a knowing attempt to cause physical harm to Brock.
 {¶ 21} It is undisputed that Devol was behind the wheel of the automobile that made physical contact with Brock following an altercation between Devol and Brock. According to Brock and Hoff, Devol drove the automobile toward them as they were walking in the parking lot of the apartment complex, and Devol hit Brock with enough force that he rolled over the front hood of the car and landed on the concrete. It is undisputed that Devol was aware that Brock was in close proximity to his automobile. According to Devol, he "abruptly" moved his automobile by "forcefully" stepping on his gas pedal, causing the automobile to lurch forward, and then placed his foot on the brake. Hoff and Gaines testified that following the altercation, Devol drove out of the apartment complex at a high rate of speed.
 {¶ 22} We can find nothing inherently incredible or implausible in Brock's or Hoff's versions of the events. Moreover, the resolution of the inconsistencies at trial falls properly within the fact finder's province. At trial, the trial court was able to hear all of the witnesses and view their demeanor. Substantial credible, competent evidence existed to support the trial court's verdict. Our review of the record does not identify inconsistencies of such significance that would prevent reasonable minds from finding the elements of felonious assault proved beyond a reasonable doubt. The trial court's conclusion regarding the felonious assault was not contrary to the manifest weight of the evidence.
 {¶ 23} Accordingly, we overrule Devol's assignment of error.
 {¶ 24} The judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.