[Cite as *State v. Sepeda*, 2022-Ohio-1889.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-21-1123

    Appellee                                          Trial Court No.  CR0201901145

v.

Rafael Sepeda                                           **DECISION AND JUDGMENT**

    Appellant                                         Decided:  June 3, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy Jarrett, Assistant Prosecuting Attorney, for appellee.

Michael H. Stah, for appellant.

* * * * *

**ZMUDA, J.**

## I.Introduction

{¶ 1} Appellant, Rafael Sepeda, appeals the judgment of the Lucas County Court

of Common Pleas, sentencing him to three years in prison after we remanded the matter

to the trial court for a retrial and a jury found him guilty of one count of felonious assault. Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On December 26, 2018, appellant was involved in a confrontation with Anthony Edwards at the corner of Logan Street and Broadway Street in Toledo, Ohio. At some point during the confrontation, Edwards was struck by appellant's Ford Explorer sport utility vehicle.

{¶ 3} For his part in the confrontation, appellant was indicted on January 25, 2019, and charged with one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. Appellant entered a plea of not guilty to the aforementioned charge, and the matter proceeded through pretrial discovery and motion practice.

{¶ 4} Prior to appellant's jury trial, appellant filed a "notice of intent to use 'other acts' testimony pursuant to [Evid.]R. 404(B) and R.C. 2945.59," informing the court of his desire to introduce evidence of Edwards' prior conduct involving another individual, Kevin McMahon, in order to demonstrate that the incident giving rise to the state's indictment was preplanned by Edwards. After holding a hearing on the matter, on May 1, 2019, the trial court issued an order finding the evidence of Edwards' prior conduct dissimilar to the facts of the present case and thus inadmissible to show motive under Evid.R. 404(B).

2.

{¶ 5} Thereafter, the proceeded to a jury trial and, on June 6, 2019, the jury returned a guilty verdict to the charge of felonious assault. The trial court proceeded immediately to sentencing, at which point it ordered appellant to serve three years in prison. Appellant then filed a timely notice of appeal, in which he challenged, inter alia, the trial court's refusal to allow him to introduce evidence of Edwards' prior conduct at trial.

{¶ 6} Upon reviewing appellant's arguments, we issued our decision in appellant's first appeal on August 21, 2020, in which we found (1) that the trial court erroneously applied Evid.R. 404(B), and (2) that the proffered evidence was admissible under Evid.R. 403(A). *State v. Sepeda*, 2020-Ohio-4167, 157 N.E.3d 889, ¶ 24 and 33 (6th Dist.). Because appellant was not afforded an opportunity to present the evidence at trial, we remanded the matter for a new trial. *Id.* at ¶ 42.

{¶ 7} On March 1, 2021, while appellant was awaiting retrial, the state filed a motion in limine in which it sought a hearing on the issue of self-defense. Specifically, the state asked the court to hold a hearing at which appellant would be required to state his intention to have the jury instructed on self-defense or to omit such an instruction. Moreover, if appellant elected to purse self-defense and informed the court of such decision at the hearing, the state argued that appellant would not thereafter be permitted to introduce the evidence of Edwards' prior conduct.

3.

{¶ 8} On March 11, 2021, appellant filed his memorandum in opposition to the state's motion in limine, arguing that he had no obligation to state his trial strategy as to the issue of self-defense in open court, and that he should be permitted to present the testimony concerning Edwards' prior acts even if he chose to pursue self-defense.

{¶ 9} After receiving the state's motion and appellant's memorandum in opposition, the trial court held a hearing on April 23, 2021. Following the hearing, the court issued a decision in which it explained that it would not make a final decision on the parties' arguments concerning the applicability and appropriateness of a self-defense instruction until the charge conference and would at that point "give the instructions the case warrants." Thus, the trial court denied the state's motion.[1] Thereafter, the matter proceeded to a second jury trial on May 17, 2021. At trial, the following testimony was presented regarding the incident.

{¶ 10} Dane Raymond Frauenholz testified he was driving the vehicle that was stopped directly behind appellant's vehicle at the stop sign. He first observed Edwards to the right of appellant's vehicle, which had pulled forward into the crosswalk to "get clearance of line of sight down the street" prior to making a left turn. Edwards had to

---

[1] In a second motion in limine, the state sought to preclude McMahon's testimony about Edwards' history of conduct under Evid.R. 608, construing our decision in *Sepeda* as silent on the issue of Evid.R. 608 because we did not address the issue in response to the state's motion to certify a conflict. Upon consideration, the trial court denied the motion and ruled that McMahon could testify.

4.

walk into the intersection a bit as he crossed in front of appellant's vehicle, moving right to left. Frauenholz did not see any interaction between Edwards and appellant while Edwards crossed in front of appellant's vehicle.

{¶ 11} After Edwards cleared the crosswalk, he continued down the sidewalk for a bit, then returned to the crosswalk, appearing to engage in an argument with appellant. At this point, Frauenholz rolled his window down to listen to the discussion. Frauenholz heard two voices, but he could not discern what Edwards and appellant said. Once Edwards neared appellant's vehicle, he hurled an empty drink cup at the vehicle, but the wind caught the empty cup and blew it away. Appellant then "accelerated extremely fast straight out into the intersection and changed his direction back" towards the place where the victim stood on the sidewalk. Frauenholz indicated that appellant drove into the middle of the roadway before changing direction and aiming toward Edwards.

{¶ 12} According to Frauenholz, Edwards never reentered the road; appellant drove onto the sidewalk and made contact with him. Frauenholz testified that "it was violent. It was fast. And the pedestrian, to avoid 100 percent contact with the vehicle, was able to move his body up onto the hood of the SUV." Appellant drove "up the grassy area" with Edwards on the hood, before turning left "extremely hard, which made [Edwards] roll off the right side of the vehicle in a barrel roll."

{¶ 13} Appellant then sped off without stopping, out of the parking lot and in the opposite direction he was originally traveling. Frauenholz and his son stayed with

5.

Edwards until emergency services arrived. In recalling the event, Frauenholz noted that Edwards never came within arms-reach of appellant's vehicle, never struck the vehicle, and did not jump onto the hood of the vehicle while it was stopped at the intersection. Frauenholz only observed Edwards pounding on the hood once appellant accelerated with him on the hood.

{¶ 14} Frauenholz's son, Dane Emerson Frauenholz, also testified. His version of events was similar to his father's, indicating Edwards walked in front of appellant's car to the sidewalk on the left. After walking a bit more, Edwards turned back and went toward appellant's vehicle, which was still at the stop sign, and Edwards went no further than the edge of the sidewalk. Dane observed an exchange between Edwards and appellant, but could not understand any words. Then Edwards hurled a Styrofoam cup at the vehicle and it blew back in the wind. The vehicle then "drove forward very quickly into the middle of the road * * * made a sharp U-turn and drove up onto the sidewalk." As Edwards stood still, the vehicle went "over the curb onto the sidewalk." Edwards then jumped up and onto the hood of appellant's vehicle, and appellant "didn't stop on the sidewalk. He kept going through the grass with the pedestrian on the hood." After the vehicle "jumped" the "parking pillars that are in the parking spots," Edwards fell off the hood. Dane testified that appellant's vehicle was moving the entire time.

{¶ 15} Like his father, Dane did not observe Edwards near appellant's vehicle or see Edwards strike or kick the vehicle.

6.

{¶ 16} A third eyewitness, Robert Langford, testified that he was at the intersection, attempting a left turn, when he saw Edwards waving his arms at appellant and talking to appellant. The state then directed Langford to a diagram that was offered into evidence by the state and subsequently published to the jury. For convenience, this diagram is reproduced below.

7.



{¶ 17} Referencing this diagram, Langford testified that "all of a sudden the truck as [appellant is] moving out on to Broadway veers his truck back up in to the sidewalk where A is and approached the pedestrian and stepped on the gas and went up in to where the pedestrian was at A." Langford testified that appellant drove up onto the grassy area and Edwards went up on the hood. Appellant never slowed or stopped. After Edwards rolled off the hood, appellant put the truck in reverse to angle out and drove out of the parking lot, around the corner to the south, and pulled off.

{¶ 18} After witnessing the incident, Langford pulled his car off the road, parked, and told his wife to call 911. Langford only witnessed the confrontation after Edwards had completed his crossing in front of appellant's vehicle in the cross walk. He did not see Edwards hurl the cup, and could not hear what was being said by Edwards or appellant.

{¶ 19} Each of the state's eyewitnesses testified that appellant's vehicle never slowed or stopped as it drove up onto the sidewalk. Further, the eyewitnesses stated that Edwards either jumped or flew up onto the hood, landing on all fours. Again, the witnesses stated that appellant's vehicle did not slow or stop, but turned and dislodged Edwards, who landed on the ground.

{¶ 20} Edwards also testified at trial. He indicated that he gave appellant a look as he crossed in front of him, because appellant's vehicle was blocking the crosswalk. He noticed appellant "mouthing something," so he spit water on the ground and continued

through the crosswalk. Appellant then reportedly rolled his window down and said F-U or f***'n n****r, and he responded with a "F you B," and "get out of the car" and threw his Styrofoam cup. Appellant then rolled his window up, hit the gas, "and proceeded to do a U-turn and come up over the curb and tried to run me over." Edwards jumped on top of the hood of appellant's vehicle and held on as he was trying to get appellant to stop. Edwards testified, "I was able to barely jump on top of the hood and keep myself from going underneath it." He was thrown free of the vehicle as appellant drove off. Edwards was ultimately taken by ambulance to a hospital. He described his injuries as including road rash that left scarring, and a back and hip injury that caused lingering pain.

{¶ 21} During appellant's case-in-chief, he called McMahon to the stand to testify about his prior encounter with Edwards. McMahon characterized Edwards as an aggressor who wanted to provoke a fight. According to McMahon, Edwards eyed the hood of his car while he was stopped at an intersection, as if contemplating jumping on it. Instead, Edwards went around the car and threw himself into the back end, thereby damaging McMahon's vehicle. McMahon drove away to safety, initially concerned that Edwards was mentally ill or under the influence of drugs, but later surmising that he had nearly become the victim in an insurance scam. While watching local television news reporting of the incident involving appellant and Edwards, McMahon recognized Edwards as the same person whom he previously encountered.

10.

{¶ 22} Appellant also called Neil Weiker, a technician at Brondes Ford, who took photos of damage to his vehicle after appellant took it in for repair. He noted damage to the hood caused by a "striking down from above" and no damage to the front or grill. He also observed damage on the driver's side fender and front edge of the driver's door that could have been caused by a kick. On cross-examination, Weiker acknowledged that he could not determine when the damage to each area occurred.

{¶ 23} Appellant's wife, Kathy Sepeda, also testified during appellant's case-in-chief. She testified that Edwards ran in front of appellant's vehicle, approached the driver's side door, hit the mirror, and kicked the door. She said that Edwards kept telling appellant to get out and fight him and that appellant repeatedly asked Edwards to get away from the vehicle. Kathy indicated appellant came to a stop in the grass after Edwards got in front of the vehicle and forced appellant to stop. It is unclear from Kathy's testimony how or why appellant drove onto the grass, only to be forced by Edwards to stop. Nonetheless, Edwards then reportedly jumped on the hood of appellant's vehicle and began pounding on the hood and windshield. As appellant tried to drive away, Edwards rolled off the vehicle. Kathy testified that Edwards got up and walked away, shaking his arm.

{¶ 24} Thereafter, appellant drove through the grass, knocking the muffler loose when he drove over two parking blocks, and continued on to the roadway in another

11.

direction. Kathy stated that appellant called his dispatch to report the incident, and then returned to the scene.

{¶ 25} Finally, appellant testified. His testimony was similar to the eyewitnesses and Edwards, up until the point Edwards ended up on his hood. He acknowledged turning left onto Broadway and continuing the turn until he was in front of Edwards. Appellant testified that he came to a complete stop and Edwards climbed on top of his car and started punching the hood. Appellant was afraid that Edwards would bust through his windshield and he stated that Kathy was screaming and asking him to get them away from Edwards. Edwards hurled himself at the windshield three times, and on the third time, he slid "off on two feet and [exited] to the left, well, it would be the right on the passenger side to the rear." He walked a bit, then collapsed, and appellant just "reacted" and drove over the parking blocks, damaging his vehicle. He called his dispatch, then eventually returned to the scene.

{¶ 26} Notably, during recross-examination, appellant doubled down on his claim that he did not strike Edwards with his vehicle. Specifically, appellant stated that he "did not want to harm Anthony Edwards at all." Furthermore, appellant insisted that he "took no actions to harm him."

{¶ 27} At the close of appellant's testimony, the trial court revisited appellant's request for a jury instruction on self-defense. Appellant's trial counsel urged that such an instruction was warranted in light of testimony from appellant and Kathy that they feared

12.

for their safety when Edwards approached appellant's vehicle. This evidence of fear, according to trial counsel, "tends to support the theory of self-defense that should be given to the jury and the jury can decide for themselves whether self-defense is applicable in their deliberations." In response, the trial court questioned appellant's counsel on the impact of appellant's testimony that he did not strike Edwards with the vehicle at all. Ultimately, the trial court denied appellant's request for an instruction on self-defense or defense of others, which it found was inconsistent with "what [appellant] himself just said."

{¶ 28} At the conclusion of the trial, the jury found appellant guilty of the sole charge of felonious assault. The trial court immediately proceeded to sentencing, ultimately ordering appellant to serve three years in prison.

{¶ 29} Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 30} On appeal, appellant assigns the following errors for our review:

I. The trial court erred in failing to provide the jury with instructions on the lesser included offenses of Negligent Assault and Simple Assault as required by the facts of the case.

II. The trial court erred when [it] failed to provide the jury with instructions for self-defense and defense of another as required by the facts of the case.

13.

## II.    Analysis

{¶ 31} In his two assignments of error, appellant argues that the trial court erred in failing to provide the jury with certain instructions.

{¶ 32} When instructing the jury, the trial court should include "all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. White*, 988 N.E.2d 595, 2013-Ohio-51, ¶ 97 (6th Dist.), quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.  Under Crim.R. 30(A),

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.  * * * On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

{¶ 33} When properly objected to by the challenging party, "we review a trial court's decision refusing to give a requested jury instruction for abuse of discretion." *State v. Allen*, 6th Dist. Lucas No. L-18-1191, 2020-Ohio-4493, ¶ 81, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).  However, when the challenging party did not object to the trial court's failure to give a particular instruction below, our

14.

review of the trial court's decision as to that instruction is limited to plain error. *State v. Nastal*, 6th Dist. Wood No. WD-21-042, 2022-Ohio-970, ¶ 17, citing *State v. Long*, 53 Ohio St.2d 91, 94-95, 372 N.E.2d 804 (1978), citing Crim.R. 30 and Crim.R. 52(B).

{¶ 34} An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). By contrast, plain error analysis is more limited. Indeed, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. When applying the plain error standard, "we may not reverse absent a showing that the trial court erred, the error was plain and obvious, and the error affected the outcome of the trial." *Nastal* at ¶ 17, citing *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935.

{¶ 35} In his first assignment of error, appellant asserts that the trial court erred in failing to instruct the jury on the lesser included offenses of negligent assault and simple assault. Notably, appellant did not request such an instruction before the trial court. Thus, he has waived all but plain error.

{¶ 36} "'An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense.'" *State v. Burks*, 6th Dist. Lucas Nos. L-05-1346 and L-05-1347, 2007-Ohio-3562, ¶ 13, quoting *State v. Carter*, 89 Ohio

15.

St.3d 593, 600, 734 N.E.2d 345 (2000). "'Even where the defendant offers some evidence through his own testimony supporting a lesser included offense, he is still not entitled to an instruction on that offense if the totality of the evidence does not reasonably support an acquittal on the greater offense and a conviction on the lesser offense.'" *Id.* at ¶ 23, quoting *State v. Neely*, 161 Ohio App.3d 99, 2005-Ohio-2342, 829 N.E.2d 718, ¶ 46 (1st Dist.).

{¶ 37} Here, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶ 38} In addition to the instructions the trial court provided to the jury concerning this offense, appellant also argues that the trial court should have instructed on negligent assault under R.C. 2903.14, and simple assault under R.C. 2903.11. Pursuant to R.C. 2903.14, negligent assault is committed where one "negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, [causes] physical harm to another or to another's unborn." Further, simple assault is committed where one knowingly causes or attempts to cause physical harm to another or

16.

to another's unborn, R.C. 2903.13(A), or recklessly causes serious physical harm to another or to another's unborn, R.C. 2903.13(B).

{¶ 39} "The distinguishing element between felonious assault in violation of R.C. 2903.11(A)(2) and assault in violation of R.C. 2903.13(A) is whether the actor used a deadly weapon."[2] *State v. Cochran,* 2d Dist. Montgomery No. 19448, 2003-Ohio-3980, ¶ 11.

{¶ 40} Appellant makes much of the distinction between the deadly weapon language in the felonious assault statute and the lack of such language in the simple assault statute. He insists that the jury could, but need not, find that his vehicle was a deadly weapon. On this issue, we recently stated the following:

> We have previously determined that a vehicle could be a deadly weapon, "when used in a manner likely to produce death or great bodily harm." *State v. Belcher*, 6th Dist. Lucas No. L-13-1250, 2014-Ohio-5596, ¶ 29, citing *State v. Gimenez*, 8th Dist. Cuyahoga No. 71190, 1997 WL 547950, *7 (Sept. 4, 1997). In considering whether a vehicle could be a deadly weapon, "[t]he intent of the user, manner of use, and actions of the

---

[2] Simple assault under R.C. 2903.13(A) also merely requires proof of physical harm, rather than serious physical harm. Appellant does not dispute that Edwards suffered serious physical harm. This fact is confirmed by the evidence, especially the testimony provided by Edwards as to the injuries he sustained, including road rash and a back and hip injury that caused chronic pain. Therefore, this distinction in the two offenses provides no basis for an instruction on simple assault in this case.

17.

user are among the factors that must be examined." *Belcher* at ¶ 29, citing *Giminez* at *7; *see also State v. Bronikowski*, 6th Dist. Lucas No. L-78-073, 1979 WL 207000 (Feb. 9, 1979) (offender intentionally drove the vehicle toward an oncoming police cruiser in an attempt to cause physical harm); *State v. Stevens*, 6th Dist. Lucas No. L-10-1003, 2010-Ohio-4718, ¶ 25 (manner of use determinative of finding automobile is a deadly weapon). A careless or negligent use of a vehicle, however, does not equal use of the vehicle as a deadly weapon without evidence that the driver actually used or possessed the vehicle as a weapon as opposed to a conveyance. *See, e.g., State v. Haupricht*, 6th Dist. Fulton No. F-81-18, 1982 WL 6451, *4 (Jun. 11, 1982) ("Use or possession of the truck as a deadly weapon would necessarily involve knowledge on the part of appellant and would, therefore, preclude a finding as to negligent assault.")

{¶ 41} *State v. Nastal,* 6th Dist. Wood No. WD-21-042, 2022-Ohio-970, ¶ 20. In *Nastal*, we noted that the defendant cited to "no evidence demonstrating he possessed or used his truck as a weapon, as opposed to using the truck as a vehicle." *Id.* at ¶ 23. However, in this case, the evidence introduced by the state demonstrates just the opposite.

{¶ 42} Here, the testimony provided by the state's eyewitnesses demonstrated that appellant pulled his vehicle into the intersection of Logan Street and Broadway Street,

18.

made a U-turn, and then proceeded to accelerate his vehicle directly into Edwards, at no point slowing down. Appellant's actions forced Edwards onto the hood of the vehicle until appellant turned sharply and Edwards rolled off of the vehicle. The only evidence to directly refute the state's testimony was that offered by appellant and Kathy, each of whom insisted that appellant did not strike Edwards at all. No evidence was introduced that would reasonably suggest that Edwards was struck by appellant's vehicle while appellant was merely using the vehicle as a conveyance rather than a weapon. Instead, the evidence provided by the state demonstrates that appellant deliberately used his vehicle as a weapon with which to strike Edwards. When used in this manner, a motor vehicle is likely to produce death or great bodily harm, and is thus a deadly weapon. *Belcher* at ¶ 29. Consequently, we find that appellant's argument for an instruction on the lesser included offense of simple assault under R.C. 2903.13(A) is unavailing.

{¶ 43} Next, we turn to negligent assault and simple assault under R.C. 2903.13(B). The difference between felonious assault and negligent assault lies in the defendant's mens rea. *See State v. Hawkins*, 2d Dist. Montgomery No. 21691, 2007-Ohio-2979, ¶ 21 ("The only statutory difference between felonious assault and negligent assault is the mens rea necessary to be convicted of the crime."). Similarly, felonious assault is different from simple assault under R.C. 2903.13(B) because the two offenses require a different mens rea, namely knowingly and recklessly, respectively. Thus, the viability of the instructions on negligent assault and simple assault in this case centers on

19.

whether the evidence could lead the jury to find that appellant caused serious physical harm to Edwards in a reckless or negligent manner, but not knowingly.

{¶ 44} Having reviewed the record carefully, we find that the state's evidence would not reasonably support both an acquittal on felonious assault and a conviction on either negligent assault or simple assault. If believed, the testimony provided by the state's eyewitnesses demonstrated that appellant acted knowingly when he pointed his vehicle in Edwards' direction and accelerated it directly into Edwards without slowing or stopping. Again, appellant offered no evidence to suggest that he accidentally struck Edwards. The only evidence in the record that is contrary to the state's evidence was the testimony offered by appellant and Kathy that appellant did not strike Edwards at all.

{¶ 45} Given this evidence, the jury was left to conclude that either (a) appellant ran directly into Edwards with his vehicle, or (b) appellant committed no offense at all and Edwards manufactured his injuries by throwing himself at appellant's stopped vehicle. The former conclusion supports the notion that appellant acted knowingly, which defeats appellant's argument that he could plausibly be found not guilty of felonious assault but guilty of either negligent assault or simple assault. The latter conclusion leads to an outright acquittal, regardless of the type of assault charged.

{¶ 46} For the foregoing reasons, we find that the totality of the evidence contained in the record does not reasonably support both an acquittal on felonious assault and a conviction on the lesser included offenses of negligent assault or simple assault.

20.

Thus, appellant was not entitled to instructions on these offenses and the trial court did not commit plain error in failing to provide such instructions. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 47} In his second assignment of error, appellant argues that the trial court abused its discretion in denying his request for a self-defense instruction.

> The elements of a valid claim of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger.

*State v. Petway,* 2020-Ohio-3848, 156 N.E.3d 467, ¶ 41 (11th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Under the burden shifting framework outlined in the current version of R.C. 2901.05(B), which became effective on April 6, 2021 (approximately one month prior to appellant's second trial), "the state is not required to prove the defendant did not act in self-defense until that defendant introduces evidence that tends to support they acted in self-defense." *State v. Walker,* 2021-Ohio-3860, 180 N.E.3d 60, ¶ 61 (6th Dist.), citing *Petway* at ¶ 55. Thus,

21.

"the defendant maintains the burden of production on their self-defense claim before the state inherits the burden of persuasion." *Id.*

**{¶ 48}** As demonstrated above in our recitation of the facts and revealed in the diagram depicted in State's Exhibit 44, appellant produced no evidence to show that he was in imminent danger of death or great bodily harm such that he was entitled to use his vehicle as a weapon against Edwards. Kathy testified that Edwards hit the mirror and door of appellant's vehicle, and kept telling appellant to get out and fight him, but appellant never testified that these facts, if true, caused him to be in fear for his life or the life of his wife. Further, Kathy testified that Edwards jumped on the hood of appellant's vehicle and began pounding on the hood and windshield, not that appellant ran into Edwards with his vehicle in order to defend himself and his wife. Moreover, neither appellant nor Kathy testified that Edwards attempted to enter into appellant's vehicle.

**{¶ 49}** The testimony suggests appellant, having already taken off in his vehicle across Broadway Street, decided to turn his vehicle around and run into Edwards, a pedestrian armed with only a windblown Styrofoam cup. Ultimately, appellant's self-defense and defense of others claim fails because the evidence demonstrates that he wielded his vehicle as a blunt force object against Edwards' body merely based upon a brief verbal argument in which he was in no genuine danger of physical harm. On this evidence, the trial court appropriately refused to instruct the jury on self-defense and defense of others.

22.

**{¶ 50}** In explaining its refusal to provide the self-defense and defense of others instruction, the trial court noted that the affirmative defenses of self-defense and defense of others were inconsistent with appellant's testimony. Because the record includes no evidence to reasonably support a claim of self-defense or defense of others, we find the trial court's emphasis on the inconsistency between appellant's testimony and the requested instruction appropriate.

**{¶ 51}** "Self-defense is an affirmative defense, and therefore, 'a defendant claiming self-defense does not seek to negate an element of the offense but rather seeks to relieve himself from liability.'" *State v. Gardner*, 8th Dist. Cuyahoga No. 110606, 2022-Ohio-381, ¶ 21, quoting *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 81369, 2003-Ohio-31, ¶ 10, citing *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166 (1986). When claiming self-defense, a defendant "admits the facts claimed by the prosecution and then relies on independent facts or circumstances to exempt [him] from liability." *State v. Latessa*, 11th Dist. Lake No. 2006-L-108, 2007-Ohio-3373, ¶ 51, citing *Martin* at 94.

**{¶ 52}** Here, appellant never admitted to the facts claimed by the prosecution. Specifically, appellant did not admit that he struck Edwards with his vehicle. Quite the opposite, appellant and Kathy each testified that Edwards sustained his injuries when he flung himself at appellant's stopped vehicle. Rather than asserting an affirmative defense, appellant advanced a mutually exclusive theory of the case in which he insisted

23.

that he had nothing to do with Edwards' injuries. This testimony does not support an instruction on self-defense or defense of others. Further, the remaining record lacks any evidence to support a claim of self-defense or defense of others. Therefore, we find that the trial court did not abuse its discretion in denying appellant's requested instruction.

{¶ 53} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 54} In light of the foregoing, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.           _____
                                                        JUDGE
Gene A. Zmuda, J.         

Myron C. Duhart, P.J.         _____
CONCUR.                                                       JUDGE


                                                        _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.