[Cite as *State v. Jones*, 2022-Ohio-4202.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :            No. 111208

    v.                                    :

RICARDO JONES,                  :

    Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 23, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-661424-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mahmoud Awadallah and Nora Bryan, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Ricardo Jones ("Jones") appeals his sentence following a guilty plea to assault under R.C. 2903.13(A). We reverse the consecutive

sentence imposition and remand to the trial court to modify the sentence accordingly.

## I.     Introduction and Background

{¶ 2}   Jones was previously adjudicated a delinquent and remanded to the legal custody of the Ohio Department of Youth Services ("ODYS") until his 21st birthday.  Jones's ODYS commitment is pursuant to R.C. 2152.16(A)(1)(b):

> (A) (1)    If a child is adjudicated a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court may commit the child to the legal custody of the department of youth services for secure confinement as follows:
>
> * * *
>
>        (b)  For a violation of section 2923.02 of the Revised Code that involves an attempt to commit an act that would be aggravated murder or murder if committed by an adult, a minimum period of six to seven years as prescribed by the court and a maximum period not to exceed the child's attainment of twenty-one years of age.

*Id.*

{¶ 3}   The current incident occurred on June 4, 2021, two months after Jones's 18th birthday, involving a brief altercation with an ODYS security officer that injured the officer's left pinky finger.  Initially charged with felonious assault (R.C. 2903.11(A)(1)) and simple assault (R.C. 2903.13(A)),[1]  Jones pleaded guilty to the latter charge, a third-degree felony.

{¶ 4}   Jones appeared at the hearing via technology from the ODYS commitment facility.  During the colloquy, Jones was advised of potential

---

[1] Simple assault requires proof of physical harm rather than serious physical harm. *State v. Sepeda*, 6th Dist. Lucas No. L-21-1123, 2022-Ohio-1889, ¶ 39, fn. 7.

community-control sanctions, term of imprisonment, and postrelease control. He was not advised of the possibility that the criminal term could begin after his ODYS commitment was complete.

{¶ 5} At the trial court's urging, defense counsel agreed that Jones should be physically present at the sentencing. Jones was transferred to the Cuyahoga County jail on December 1, 2021, for the presentence investigation where he remained until the December 16, 2021 sentencing. Jones appeared at the sentencing via Zoom video from the Cuyahoga County jail. According to the trial court, the victim impact statement revealed the officer lost his watch, suffered a broken left pinky finger, was unable to work overtime, and the altercation was for no apparent reason.

{¶ 6} Defense counsel requested lenity citing the brevity of the altercation and Jones's progress at ODYS. Jones completed high school and a college course and had registered for another. Jones expressed remorse and said that he was grieving a loss. Jones stated he was throwing away hand sanitizer that he used to clean out a bowl when the officer, who had recently been disciplined for allowing another resident to drink sanitizer, grabbed Jones's hand out of the trash.

{¶ 7} "I reacted wrongly. I reacted wrongly and I reacted too fast so it was — it was bad. It was bad. It was bad." (Tr. 22.) Jones explained that he and the security officer had a "cool bond though" and that it never should have happened. (Tr. 21.)

{¶ 8} The trial court stated, "Jones has displayed a lack of remorse for the victim and the injuries caused. Jones displays no empathy for adults or authority figures at all." (Tr. 23.) The trial court also said that, based on Jones's past record and his statement at sentencing, "it seems that assault is something you do quite readily." *Id.* Jones replied, "I fought in elementary school, and I did not start fighting again until I got sentenced to ODYS." (Tr. 26-27.) Jones denied that he liked to fight and explained that in ODYS, the other residents try to be "the biggest or baddest person" so it is "hard to avoid fighting" in that environment. (Tr. 24.)

{¶ 9} The trial court encouraged Jones to continue to work on his education and anger management. "You can have a bright future ahead of you, but you have to get control of your anger problems, and obviously not to settle any disagreements through fighting and assaults as you have done in the past." (Tr. 28.) "I hope that you will take that course and I wish you well in the future." (Tr. 28-29.)

{¶ 10} The trial court recited the R.C. 2929.14(C)(4) consecutive sentence grounds and imposed a 24-month term in the Lorain Correctional Institution, an adult prison, to be served consecutive to Jones's juvenile commitment:

> It is necessary due to your history and your attitudes and the facts of this case to place you on consecutive sentences in order to protect the public from future crime.
>
> The fact that this crime occurred while you were incarcerated is quite troubling and, therefore, 24 months is not disproportionate to the seriousness of your conduct and to the danger that you pose to the public. You obviously committed this offense while you were under a court-imposed sanction, including incarceration, and the history of your criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime.

(Tr. 27.)

**{¶ 11}** The findings were journalized:

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

Court costs are suspended until the defendant is released.

Journal entry No. 120101289 (Dec. 16, 2021). Defense counsel objected to the imposition of consecutive time.

## II. Assignment of Error

**{¶ 12}** Jones's single assigned error is that the trial court's imposition of consecutive sentences in this matter is contrary to law. We agree.

## III. Standard of Review

**{¶ 13}** R.C. 2953.08(A)(4) gives a criminal defendant the right to appeal a sentence that is contrary to law. R.C. 2953.08(G)(2) governs this court's review of a felony sentence. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 27, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. The statute provides that an appellate court "may increase, reduce, or otherwise modify a sentence" "or may vacate the sentence and remand the matter * * * for resentencing" if it "clearly and convincingly finds" either of the following:

"(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or]

(b) That the sentence is otherwise contrary to law."

*Jones* at ¶ 12, quoting R.C. 2953.08(G)(2)(a)-(b).

## IV. Discussion

### A. Assignment of Error

{¶ 14} The parties agreed at oral argument that their research indicates the issue before this court is one of first impression. Jones's single assigned error is that the trial court sentenced Jones to serve his criminal sentence consecutive to his juvenile disposition without authority to do so.

### B. Analysis

{¶ 15} Jones offers that there is no case law on point, while the state counters that *In re Samkas*, 80 Ohio App.3d 240, 608 N.E.2d 1172 (8th Dist.1992), is instructive. *Samkas* determined that R.C. 2151.355, in effect at the time, allowed juvenile courts to impose consecutive juvenile dispositions though not specifically stated. The legislature subsequently promulgated R.C. 2152.17 that governs juvenile consecutive dispositions and specifications. However, the juvenile court's authority to impose consecutive juvenile sentences is not in dispute here.

{¶ 16} Jones is correct that the juvenile and common pleas courts are creatures of statute whose authority is limited as courts across the nation recognize. Jones also offers that the common pleas court's attempt to legally invoke a consecutive sentence under R.C. 2929.14(C)(4) that governs the findings a trial

court must make when imposing consecutive terms fails to cure the issue because the imposition is invalid.

{¶ 17} The state also posits that the juvenile commitment qualifies as a sentence of imprisonment for purposes of consecutive sentences under R.C. 2929.41 and 2929.14(C):

> (A) Except as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States. Except as provided in division (B)(3) of this section, a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution.

R.C. 2929.41(A).

{¶ 18} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 19} It is axiomatic that a court may "impose sentences only as provided by statute." *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 22, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 21-22. This tenet "'reflects a fundamental understanding of constitutional democracy' that the power to define criminal offenses and prescribe punishment is vested in the legislative branch of government[.]" *Id.*, quoting *id*. *See also State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, 134 N.E.3d 164, ¶ 18 ("[I]n Ohio, judges have no inherent power to create sentences, and the only sentence that a trial judge may impose is that provided for by statute.").

{¶ 20} Jones offers that the juvenile and common pleas courts are creatures of statute whose authority is limited. Thus, the common pleas court's attempt to legally invoke a consecutive sentence under R.C. 2929.14(C)(4) that governs the findings a trial court must make when imposing consecutive prison terms fails to cure the issue because the imposition is invalid.

{¶ 21} "R.C. 2151.07 establishes Ohio's juvenile courts, which are divisions of the courts of common pleas, and R.C. 2151.23(A) vests them with 'exclusive original jurisdiction * * * [c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be * * * a delinquent * * * child.'" *State v. Hudson*, Slip Opinion No. 2022-Ohio-1435, ¶ 24, quoting R.C. 2151.23(A)(1).

{¶ 22} R.C. 2931.03 addresses the jurisdiction of the adult criminal courts. "'The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas.'" *Id.* at ¶ 23, quoting R.C. 2931.03.

{¶ 23} The overarching objectives of the criminal and juvenile disposition systems are also specified by statute. "Juvenile courts hold a 'unique place in our legal system.'" "They are legislative creatures that 'eschewed traditional, objective criminal standards and retributive notions of justice.'" *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 14, quoting *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65-66.

{¶ 24} In *Hand*, "[t]he question was whether Hand's prior juvenile adjudication for aggravated robbery under R.C. 2911.01(A)(3) should operate as a first-degree-felony conviction to enhance his sentence." *Id.* at ¶ 3. "[T]he trial court relied on R.C. 2901.08(A) and ruled that Hand's prior juvenile adjudication required imposition of mandatory prison terms under R.C. 2929.13(F)[(6)]." *Id.* at ¶ 4. "[W]hen read together, the two statutes say a juvenile adjudication counts as a previous conviction that can enhance either the degree of a later offense or a subsequent sentence to include mandatory prison time." *Id.* at ¶ 9. The trial court determined the imposition was proper under R.C. 2901.08(A), which provides in pertinent part:[2]

---

[2] Pursuant to 134th General Assembly, OH S.B. No. 288 (2021-2022), a proposed amendment was introduced February 2, 2022. The proposed language generally tracks

"If a person is alleged to have committed an offense and if the person previously has been adjudicated a delinquent child or juvenile traffic offender for a violation of a law or ordinance, * * * the adjudication as a delinquent child or as a juvenile traffic offender is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person relative to the conviction or guilty plea."

(Emphasis deleted.)  *Id.* at ¶ 9, quoting R.C. 2901.08(A).

{¶ 25} *Hand* determined that R.C. 2901.08(A) was unconstitutional because, unlike a prior criminal conviction, a juvenile adjudication is not subject to due process protections.

Because a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond the statutory maximum or mandatory minimum. (*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), followed.)

*Hand* at paragraph two of the syllabus.[3]

{¶ 26} The court emphasized the rehabilitative versus punitive purposes of the juvenile and criminal systems:

The overriding purposes for dispositions under this chapter "are to provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest

---

the finding in *Hand* that a juvenile adjudication shall not be used to enhance or elevate a sentence.

[3] *Alleyne* and *Apprendi* generally held that, other than a prior conviction that was subject to similar protections, a fact that increases the penalty for a crime must be submitted to a jury and subject to processes that satisfy the due process considerations of "'fair notice, reasonable doubt, and jury trial guarantees.'"  *Hand* at ¶ 21-22, 31, quoting *Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999).

and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."

*Id.* at ¶ 14, quoting R.C. 2152.01(A).

{¶ 27} In contrast, "the purposes of felony sentencing 'are to protect the public from future crime by the offender and others and to punish the offender.'" *Hand,* 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 14, quoting R.C. 2929.11(A). *"[J]uvenile adjudication differs from criminal sentencing — one is civil and rehabilitative, the other is criminal and punitive."* (Emphasis added.) *Id.* "[A] juvenile adjudication is not a conviction of a crime and should not be treated as one." *Id.* at ¶ 38.

{¶ 28} The Ohio Supreme Court has carefully navigated the increasingly hazy demarcation between juvenile delinquency and adult criminality and recently explained elements of the required balance in *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 12. The court reiterated that, in addition to the indisputably different purposes underlying each system, the constitutional implications of using juvenile adjudications to enhance or increase subsequent adult criminal acts are of paramount importance.

{¶ 29} In *Buttery*, the court addressed "whether a conviction for failure to register as a sex offender under R.C. 2950.04 violates a defendant's due-process and jury-trial rights" where the "duty to register arises from a juvenile court's delinquency adjudication." *Id.* at ¶ 1. The court held that the conviction for failure to register as a sex offender under R.C. 2950.04 did not violate the due process rights

of the defendant where the duty arises from a juvenile court delinquency adjudication that included the order to register. Thus, the adult conviction for failure to register under R.C. 2950.04 was not used to enhance a sentence. *Id.* at ¶ 22.

{¶ 30} *Buttery* also contrasted its decision with *Hand,* 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, and *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138. The court declared in *Carnes* that R.C. 2923.13(A)(2) was not unconstitutional because it permitted a prior juvenile adjudication to serve as an element of a weapons-under-disability offense. *Buttery* at ¶ 13. Nineteen years after Carnes had been adjudicated delinquent for felonious assault that was a felony of violence if committed by an adult, Carnes was charged with possession of a firearm while under a disability.

{¶ 31} As the *Buttery* court explained:

[I]n *Hand*, we had faulted [R.C. 2901.08(A)] for "convert[ing] an adjudication into a conviction when the adjudication process did not provide the right to have a jury test the elements of that offense." *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 36.

We stated in *Carnes* that in comparison, R.C. 2923.13, the weapons-under-disability statute, did not equate a juvenile adjudication with an adult conviction but instead considered a juvenile adjudication itself as one of several discrete conditions that prevented a person from legally possessing a firearm. Other disabilities, in addition to adult convictions and juvenile adjudications, include being a fugitive or being drug dependent. R.C. 2923.13(A)(1) and (4).

*Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 15-16.

{¶ 32} Thus, it is clear that "the juvenile system * * * is civil in nature and emphasizes treatment and rehabilitation to prevent treatment of juveniles as

criminals." *Buttery* at ¶ 12, citing *Hand* at ¶ 15-19. For that reason, the juvenile history of an offender may be considered as a behavioral factor to support imposing consecutive sentences, but that use "is generally reserved for instances where the offender has an extensive juvenile history." *State v. Batiste*, 2020-Ohio-3673, 154 N.E.3d 1220, ¶ 20 (8th Dist.), citing *State v. Bonner*, 8th Dist. Cuyahoga No. 97747, 2012-Ohio-2931, ¶ 6, 8.

{¶ 33} The Ohio legislature created two statutory conduits from juvenile to criminal jurisdiction. The bindover process transfers jurisdiction to the criminal court and is either mandatory or discretionary. *See* R.C. 2152.10 and 2151.12. Nationally, the bindover process is under scrutiny due to the documented detrimental effect on juveniles, particularly minorities. *See, e.g.*, *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 57-82 (Jones, J., dissenting).

{¶ 34} As explained in pending Am.Sub.H.B. No. 500, sponsor testimony that seeks to eliminate the mandatory bindover process in Ohio.

> [C]hildren are at a greater risk in adult prisons. While Ohio follows federal guidelines that require children in adult prisons to be separated from adult inmates by sight and sound, children are still vulnerable to physical assaults. Nationwide, youth in adult prisons are 5 times more likely to be sexually assaulted, usually within the first 48 hours of being incarcerated. Additionally, young people are mixed with the adult population when they turn 18 years old, typically on their 18th birthday. If we consider an 18-year-old inmate, housed with inmates more than twice his age, it is not difficult to envision why these young inmates are victimized at a far greater rate. The vulnerability of these inmates is the state's responsibility; we sentence offenders to serve their time in prison, we do not sentence them to be raped in prison. Due to these safety concerns, young people in prison will often be placed in isolation for their protection. However, this higher rate of sexual and physical assault, coupled with isolation, impacts the still-developing brain of a

child, which, combined with what is often a history of childhood trauma and abuse, results in this staggering statistic: children bound over to adult prison are also 36 times more likely to commit suicide.

(Fns. and citations omitted.) State representatives Brian Stewart and Brian Lampton, *House Bill 500 Sponsor Testimony*, 134th General Assembly Regular Session, 2021-2022. The bill has remained in committee since December 7, 2021.[4]

{¶ 35} The remaining avenue from juvenile to criminal court jurisdiction is, as Jones suggests, via discretionary and mandatory serious youthful offender ("SYO") dispositional sentences. A serious youthful offender is:

a person who is eligible for a mandatory SYO or discretionary SYO but who is not transferred to adult court under a mandatory or discretionary transfer and also includes, for purposes of imposition of a mandatory serious youthful dispositional sentence under section 2152.13 of the Revised Code, a person upon whom a juvenile court is required to impose such a sentence under division (B)(3) of section 2152.121 of the Revised Code.

R.C. 2152.02(W).

{¶ 36} The SYO is subject to a juvenile and criminal hybrid or blended sentence.

A juvenile charged as a potential serious youthful offender does not face bindover to an adult court; the case remains in the juvenile court. Under R.C. 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more restrictive disposition." That "more restricted disposition" is a "serious youthful offender" disposition and includes

---

[4] Additional concerns are the suicide rates, racial disparities, and scientific and legal recognition of the scientifically proven fact that juvenile brain development continues to age twenty-five. *See, e.g.*, *Coalition for Juvenile Justice SOS Project*, https://www.juvjustice.org/our-work/safety-opportunity-and-success-project/national-standards/section-i-principles-respondin-10; Roper v. Simmons, 543 U. S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). *See also Graham v. Florida*, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), *Jones v. Mississippi*, ___U.S.___, 141 S.Ct. 1307, 209 L.Ed.2d 390 (2021).

what is known as a blended sentence — a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick.

*State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 18.

{¶ 37} Under R.C. 2152.14, to invoke the adult portion of the sentence, the director of ODYS may request that the county prosecuting attorney move the juvenile court to invoke the adult portion of the sentence if all statutory elements apply. R.C. 2152.14. If the prosecutor refuses, ODYS may move the juvenile court directly. After a hearing under the statute that requires proof by clear and convincing evidence, the adult sentence may be invoked if the individual is at least 14 years of age and is unlikely to be rehabilitated during the remaining juvenile jurisdictional period. R.C. 2152.14(E)(1). The court may also modify the adult sentence at the time. R.C. 2152.14(E)(2). The juvenile portion of the sentence terminates, and the individual is transferred accordingly. The individual also receives credit for time served in detention and the adult prison time is reduced as a result. R.C. 2151.14(F).

{¶ 38} Jones was committed to the legal custody of ODYS under R.C. 2152.16(A)(1)(b) until the age of 21. For reasons that do not appear in the record before this court, Jones was not determined to be a SYO and was not boundover to the criminal court for the juvenile adjudication. The current conviction is for a term of imprisonment under R.C. 2929.41 and R.C. 2929.14(C)(4)

that is consecutive to a civil juvenile commitment. It appears from the limited record that Jones was directly indicted for the instant charge by the criminal court though still serving a juvenile commitment that will continue until the age of 21.

{¶ 39} The definitions in R.C. 2929.01 apply to R.C. Chapter 2929 that governs criminal penalties and sentencing. "Prison" is defined as a "residential facility used for the confinement of convicted felony offenders under the control of the Department of Rehabilitation and Correction. R.C. 2929.01(AA)." *State v. Anderson*, 2016-Ohio-7044, 62 N.E.3d 229, ¶ 14 (8th Dist.). A "sentence of imprisonment" is not defined in the Revised Code. *Id.* at ¶ 15. Courts have looked to R.C. 1.05(A) for guidance:

> (A) As used in the Revised Code, unless the context otherwise requires, "imprisoned" or "imprisonment" means being imprisoned under a sentence imposed for an offense or serving a term of imprisonment, prison term, jail term, term of local incarceration, or other term under a sentence imposed for an offense in an institution under the control of the department of rehabilitation and correction, a county, multicounty, municipal, municipal-county, or multicounty-municipal jail or workhouse, a minimum security jail, a community-based correctional facility, or another facility described or referred to in section 2929.34 of the Revised Code [that governs the type of institution where a term of imprisonment is to be served] for the type of criminal offense and under the circumstances specified or referred to in that section.

*Id. See, e.g., State v. Paige*, 153 Ohio St.3d 214, 2018-Ohio-813, 103 N.E.3d 800, ¶ 12. Thus, under R.C. Chapter 2929, the current conviction alone is clearly a sentence of imprisonment for consecutive sentencing purposes, but there is no provision that supports that the juvenile commitment falls under R.C. Chapter 2929

under the facts of this case. There are no statutory grounds to support that a civil juvenile commitment is a sentence of imprisonment for purposes of R.C. 2929.41.

{¶ 40} Further, to the state's suggestion that the juvenile commitment is a sentence of imprisonment, this court reviewed the issue of juvenile credit for confinement under R.C. 2152.18(B). R.C. Chapter 2152 does not define the term "confined." For purposes of confinement credit, "this court and others have recognized that the term is to be defined broadly." (Citations omitted.) *In re A.T.*, 2020-Ohio-5191, 161 N.E.3d 884, ¶ 8 (8th Dist.).

{¶ 41} To determine confinement,

> "juvenile courts must review the nature of the facility, to see if it is a secure facility with measures sufficient to ensure the safety of the surrounding community. They must also review the nature of the restrictions on the juvenile at the facility to determine if the juvenile was 'free to come and go as he wished' or if he was 'subject to the control of the staff regarding personal liberties * * *.'"

*In re J.K.S.,* 8th Dist. Cuyahoga Nos. 101967 and 101968, 2015-Ohio-1312, ¶ 10*,* quoting *In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5414, ¶ 18, quoting *State v. Napier*, 93 Ohio St.3d 646, 648, 758 N.E.2d 1127 (2001).

{¶ 42} Under R.C. 5139.01(A)(14), delinquent juveniles committed to a community corrections facility are also entitled to confinement credit. Ohio Adm.Code 5139-36-01(K) provides, "'Community Corrections Facility' means a facility * * * in which juveniles are committed by the court to participate in programs and services for a set period of time, established by the court, while under the secure care and supervision twenty-four hours a day." *In re J.C.E.*, 11th Dist. Geauga

No. 2016-G-0062, 2016-Ohio-7843, ¶ 32. The provisions for confinement credit do not convert a civil juvenile commitment to a sentence of imprisonment for purposes of R.C. 2929.14(C)(4).

{¶ 43} There does not appear to be a legislative avenue to our destination in this case and it is surprising that this is the first time the situation has occurred. The ODYS and juvenile delinquency statutes provide that a committed youth remains under juvenile jurisdiction and control until the age of 21 for purposes of the commitment adjudication. There should be a statute that sets forth the procedure to address felonies that occur during the commitment when the juvenile is between the ages of 18 and 21.

{¶ 44} To that end, the record also does not reveal why Jones was not processed for the current incident under R.C. 5139.01(A)(18)(a). The statute defines "disciplinary time" as the additional time that delays the felony delinquent's planned release. It is imposed by ODYS "following the conduct of an internal due process hearing for having committed any" of the listed acts "while committed to [ODYS] and in the care and custody of an institution." *Id.* The list includes an act that would be a felony if committed by an adult. *Id.* Jones is a "felony delinquent" under R.C. 5139.01(11).

{¶ 45} "In the normal course, statutes mean what they say by their plain language." *State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 7, citing *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 8. "'If the language is clear and unambiguous, we must apply the statute as written.'" *Id.*,

quoting *id*. "When a statute presents an ambiguity, however, the legislature has directed us in R.C. 1.49 to consider several factors to determine legislative intent." *Id*. "In criminal cases, we construe 'sections of the Revised Code defining offenses or penalties * * * against the state, and liberally * * * in favor of the accused.'" *Id*., quoting R.C. 2901.04(A).

{¶ 46} This court finds no ambiguity in R.C. 2929.41 or 2929.14(C)(4) as to the instant issue. Neither serves as the statutory basis to support the imposition of what is effectively a hybrid or blended sentence in this case.

{¶ 47} The plain language of R.C. 2929.14(C)(4) "only applies when the trial court is imposing multiple prison terms for convictions of multiple offenses." *State v. Beatty*, 12th Dist. Clermont No. CA2021-10-057, 2022-Ohio-3099, ¶ 5. Thus, the statute does not apply to this case where there is a single criminal conviction and a juvenile civil commitment.

{¶ 48} The issue before us has arisen in few cases nationally but the results mirror this court's resolution in the instant case. In *State v. Crawford*, 39 Kan.App.2d 897, 185 P.3d 315 (2008), the Kansas appellate court ruled that the trial court had no statutory authority to impose an adult sentence to be served subsequent to Crawford's juvenile sentence. "The power to impose consecutive sentencing is found only within statutory authority and not through common-law authority." *Id*.

{¶ 49} In *State v. Woods*, 173 Wis.2d 129, 132, 496 N.W.2d 144 (1992), the Wisconsin appellate court reversed the trial court's order that an adult sentence run

consecutively with a juvenile disposition. "As a matter of law, an adult sentence cannot run consecutive to a juvenile disposition because a juvenile disposition is not a 'sentence.'" *Id*. at 138. *See also State v. Trice*, 146 Ore.App. 15, 21, 933 P.2d 345 (1997) (a juvenile court commitment is not a sentence).

{¶ 50} The effect of the consecutive sentence imposition in this case is to stay an adult sentence for a criminal conviction until a civil juvenile commitment has been served that was not subject to the constitutional protections cited in *Hand*. Jones's juvenile commitment is at a Cuyahoga County juvenile correctional facility that provides a fully accredited high school and middle school, and technical and post-secondary school options. The facility also offers behavioral health services, mental, medical, and dental health care, and a host of other services. Family involvement is encouraged.

{¶ 51} The trial court advised Jones that with counseling for anger management and continued pursuit of higher education, Jones has a bright future. The sentence represents a clash of policies and purposes of the juvenile and criminal system. The looming specter of a two-year adult prison term would arguably have a chilling effect on the motivation to continue to pursue better opportunities during the commitment. There is also the question of how serving the two-year adult prison term at the end of his commitment will impact Jones physically, emotionally, mentally, and for potential future employment purposes.

{¶ 52} Where a sentence is contrary to law, an appellate court may "increase, reduce, or otherwise modify a sentence" "or may vacate the sentence and remand

the matter * * * for resentencing" if it "clearly and convincingly finds" "the sentence is contrary to law." *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 27, citing *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 21, and R.C. 2953.08(G)(2).

{¶ 53} Based on the record before this court, we clearly and convincingly find that the imposition of consecutive sentences is contrary to law in this case. We hereby reverse the trial court's finding of consecutive sentences and remand to the trial court to modify the sentence accordingly.

{¶ 54} Judgment of consecutive sentence is reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY J. BOYLE, J., CONCUR