**[Cite as *State v. Walker*, 2023-Ohio-4690.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-20 |
| | : | |
| v. | : | Trial Court Case No. 22 CR 0080 |
| | : | |
| JESSICA WALKER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 22, 2023

. . . . . . . . . . .

CHRISTOPHER BAZELEY, Attorney for Appellant

DREW WOOD, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Jessica Walker appeals from her conviction in the Darke County Court of Common Pleas after she was found guilty of one count of felonious assault and one count of failure to stop after an accident and sentenced to 3 to 4 ½ years in prison. For the reasons that follow, the judgment of the trial court will be affirmed in part

and reversed in part, and the matter will be remanded for resentencing.

## I. Facts and Procedural History

{¶ 2} On December 30, 2021, Robert Yant, who lived across the street from the Butler Township garage and parking lot on Grubbs Rex Road in Darke County, temporarily parked his RV in the empty township lot to clear some space in his yard. At approximately 3:00 p.m., Yant began to hear a car horn honking outside and, when it did not stop after several minutes, he went out to investigate. Yant noticed a blue Mini Cooper parked in the township lot, so he walked over to see if the occupant needed assistance.

{¶ 3} When he reached the vehicle, the lone occupant (later identified as Walker) began yelling and cussing at him, demanding that he remove his vehicle from the township lot. Hoping to avoid more conflict, Yant went back home to get his keys. He also enlisted his wife, Catherine, to help guide the large motor home back into their yard. Meanwhile, Walker made an angry and hostile call to the Darke County Sheriff's Office to complain about the RV.

{¶ 4} As Yant drove the vehicle down the road to turn it around, Catherine was left standing outside waiting for the RV's return. When Walker noticed her, Walker began yelling at her, too. Catherine yelled coarsely in response, but soon went back inside.

{¶ 5} After Yant returned the motor home to his lot, he walked back across the road to his mailbox to check the mail. As Yant turned around to walk back across the street to his house, he heard tires on the gravel and looked up just in time to see Walker, driving on the wrong side of the road, coming directly at him.

{¶ 6} The Mini Cooper struck Yant head-on, causing him to roll off the hood and land in the middle of the road. Trial testimony indicated that that Walker momentarily stopped to yell, "I hope you fucking die," before accelerating away, running the stop sign at the corner of Grubbs Rex Road and State Route 127 in the process. Catherine, who witnessed the entire incident, came to her husband's aid. She called 911, and Yant was transported to the hospital with injuries to his knees and legs. A few days later, he began to experience issues with his right hand and wrist which eventually led to multiple surgeries.

{¶ 7} Based on Walker's call to deputies about the vehicle in the township lot and then the 911 call from Catherine, Darke County deputies were soon able to identify Walker as the suspect. Captain Sean Trissel and Sergeant Steve Mills spoke with Walker about the incident. She admitted that she had been in the parking lot, that she had called deputies to complain about the RV, and that there was a handprint on the hood of her car.

{¶ 8} Walker was indicted on two counts of felonious assault (Count 1 – serious physical harm, Count 2 – deadly weapon), one count of vehicular assault (Count 3), and failure to stop after an accident (Count 4), as well as three counts of disruption of public services, which were not tried with the other counts and are not a part of this appeal. The case proceeded to trial on January 30-31, 2023.  The jury heard testimony from Yant, Catherine, Captain Trissel, and Sergeant Mills. The jury was also presented with dozens of exhibits to consider, including Yant's medical records and photographs of his injuries, pictures of the Mini Cooper, recordings of 911 calls, and audio of the interaction between

deputies and Walker. After three hours of deliberation, the jury returned guilty verdicts on Counts 2 and 4 (felonious assault – deadly weapon and failure to stop) but found Walker not guilty on Counts 1 and 3 (felonious assault – serious physical harm and vehicular assault). She was then sentenced to 3 to 4½ years in prison for felonious assault and a concurrent six-months in jail for failure to stop.

{¶ 9} Walker filed her first notice of appeal on June 13, 2023, but thereafter a new charge was filed – obstruction of official business, a fourth-degree misdemeanor. She pleaded guilty to that charge in exchange for the dismissal of the disruption of public service counts. A second notice of appeal – containing all her convictions – was filed on September 25, 2023. In it, Walker raises three assignments of error in which she alleges that her conviction was based on insufficient evidence, that her Fifth Amendment right to remain silent was violated when the prosecutor commented on her failure to testify, and that the trial court failed to properly advise her on the repercussions of violating post-release control.

## II.    Sufficiency of the Evidence

{¶ 10} In her first assignment of error, Walker asserts that her conviction for felonious assault was based on insufficient evidence that she knowingly injured Yant. It is her theory that the incident "was an unfortunate accident caused by Yant's negligence." Appellant's brief at 5.

{¶ 11} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d

380, 386, 678 N.E.2d 541 (1997). It is essentially a test of adequacy: whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

{¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 13} Walker was found guilty of felonious assault with a deadly weapon, which is prescribed as follows: no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance. R.C. 2903.11(A)(2).

{¶ 14} The first term essential for our analysis is ***knowingly***. "A person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). ***Physical harm*** is "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). Finally, "[w]hether a weapon constitutes a ***deadly weapon*** depends on the facts and circumstances of each particular case." *In re Fortney,* 2005-Ohio-3618, 832 N.E.2d 1257, ¶ 38 (4th Dist.).

{¶ 15} Walker seems to argue that Yant was struck by the car because of his negligence – that he, essentially, was in the road and got in the way. The evidence presented at trial, however, belied this theory.

{¶ 16} Yant testified that Walker was already angry when he approached her car to inquire why she was honking the horn. "She started screaming that she was a trustee and I have no business parking there." Trial Tr. at 91. Similarly, Catherine told the jury that when she got there a short time later, Walker was "yelling and cussing her head off." Trial Tr. at 225. She was even hostile to the 911 dispatcher when she called to report the RV.

{¶ 17} After the RV was settled back on his property, Yant "walked across the road, checked the mailbox, got the mail, and took maybe one step in the road to come back across and * * * heard the gravel from [Walker's] tires." Trial Tr. at 95. He further testified:

And then out of the corner of my eyes, I caught her coming down the wrong side of the road * * * and just hit me. I had enough time to put my hand out, you know, because I was still facing north, looking at my yard because I didn't expect her to come flying down the wrong side of the road at me. So, I put my hand out and she hit me. She hit my knees, buckled my knees. I went over the hood and rolled into the street on the other side.

Trial Tr. at 96.

{¶ 18} Catherine also witnessed the incident and gave a similar account to the jury. She stated that after her husband parked the RV, he went back across the street to get the mail. About that same time, she recalled that Walker began to drive her Mini Cooper

out of the parking lot, and Catherine expected her to turn out of the lot and onto the correct side of the road (the side closest to their house) to leave, but "[s]he doesn't get on that side of the road. She stays on the wrong side of the road, she doesn't stop, she doesn't let off the gas, just bam, hits him. He goes flying up over top of her car and into the road. She never even took a brake on that[.]" Trial Tr. at 231. According to Catherine, Walker only slowed down long enough to tell Yant "I hope you fucking die." Trial Tr. at 231, 266.

{¶ 19} Catherine helped her husband up off the road and got him back to their house, where she called 911. Although he initially did not want medical treatment, Yant relented and was transported to the hospital by ambulance to treat injuries (cuts and bruises) to his knee and leg. *See* State's Exhibits 7-13. A few days after the incident, Yant began to have issues with his right hand and wrist, the hand that made initial contact with Walker's car. Soon, he testified, "[y]ou could feel the tendon inside my arm clicking. You could feel it move[.]" Trial Tr. at 109. The injury was such that the fingers on his right hand basically had no function, and even at the trial, more than a year after the incident, Yant had limited use of his hand. He testified that "the pain would go into the wrist and stuff. It's all the way from my fingers all the way up to here (indicating). Which is excruciating pain, you know. Every time [I] tried to move [my] fingers it was * * * just – it's painful." Trial Tr. at 111. The hand and wrist injury forced Yant to undergo two surgeries.

{¶ 20} Based on the evidence presented at trial, taken in the light most favorable to the State, a reasonable juror could have found that Walker knowingly caused harm to Yant, thus meeting the first two elements of felonious assault. *Accord State v. Glenn*, 8th Dist. Cuyahoga No. 84087, 2004-Ohio-6570 (victim was hit by car and suffered bruised

and battered knees); *State v. Devol*, 2d Dist. Montgomery No. 19733, 2004-Ohio-70 (victim was hit by car, flipped over the hood, and landed on the street).

{¶ 21} The third element, "by means of a deadly weapon," was also reasonably resolved in favor of the prosecution, as Ohio caselaw is replete with examples of vehicles being considered deadly weapons. *See State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527; *State v. Evans*, 10th Dist. Franklin No. 01-AP-1112, 2002-Ohio-3322, ¶ 22 ("An automobile may be classified as a deadly weapon because it is capable of inflicting death[.]"); *State v. Bauman*, 7th Dist. Columbiana No. 17 CO 0016, 2018-Ohio-4913, ¶ 28 ("[A] vehicle is a deadly weapon when the offender uses it in a manner likely to produce death or grave bodily harm."); *State v. Sepeda*, 6th Dist. Lucas No. L-21-1123, 2022-Ohio-1889, ¶ 42 (a motor vehicle deliberately used to strike an individual is a deadly weapon). Indeed, it is hard to imagine a scenario such as this (Walker angrily driving on the wrong side of the road to hit Yant) in which a vehicle would not be a deadly weapon.

{¶ 22} Because the evidence demonstrated that Walker knowingly injured Yant by striking him with her car, we must conclude, as the jury did, that her conviction for felonious assault (deadly weapon) was based on sufficient evidence. There was no evidence presented that this was any type of accident or that Yant was negligent. Walker simply ran into him with her car. The first assignment of error is overruled.

### III.    Fifth Amendment and Prosecutor Comments

{¶ 23} In her second assignment of error, Walker argues that her Fifth Amendment right to remain silent was violated when the prosecutor commented on her failure to testify at trial. She highlights the following passage:

Now during Mr. Lieberman's opening statement, he suggested that you'd hear evidence of this, that Robert Yant came back to the defendant's vehicle after parking the RV, that Robert Yant hit the defendant's vehicle with his hand, that Robert Yant was on the side of the car, not on the hood, and that the defendant drove away scared, *except nobody at this trial testified about those things.*

(Emphasis added.) Trial Tr. at 384. It is Walker's contention that "[t]he state's inference is clear – Walker should have testified." Appellant's Brief at 6. We do not see it that way.

{¶ 24} "It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case." *State v. Collins*, 89 Ohio St.3d 524, 527, 733 N.E.2d 1118 (2000). Such comments do not imply that the burden of proof is on the defense, nor do they constitute a penalty on the accused's exercise of the right to remain silent. *Id.* Further, a prosecutor is not barred from challenging the weight of the evidence offered in support of a defense theory presented at trial. *Id.* at 528.

{¶ 25} In this case, the State contends that Walker has taken the prosecutor's comments out of context by leaving out important segments of its argument. For instance, immediately following the portion of the closing argument highlighted by Walker, the prosecutor stated:

And as the judge told you, the opening statements and closing arguments of counsel are not evidence. So, these things that Mr. Lieberman told you, when they didn't come into evidence, you can't consider them. There's no evidence that any of that happened anyway.

Trial Tr. at 384. When those two paragraphs are view together (we believe the State intended them to be related using the conjunction "and"), it is evident that the prosecutor was not calling attention to the fact that Walker did not testify, but instead was reminding the jury that defense counsel's opening statement was not testimony and could not be considered evidence. We find no error in the prosecutor's argument.

{¶ 26} But even assuming for argument's sake that the State's argument was improper, defense counsel did not object, thereby waiving the issue absent plain error. *State v. D'Ambrosio*, 67 Ohio St.3d 185, 192, 616 N.E.2d 909 (1993). The plain error doctrine, highlighted by Crim.R. 52(B), states that plain errors, or defects affecting the substantial rights of a party, may be noted even though they were not originally brought to the attention of the court. *State v. Elson*, 10th Dist. Franklin No. 13AP-554, 2014-Ohio-2498, ¶ 31. While a reviewing court *may* correct the mistake, it does not *have* to. *Id*; Crim.R. 52(B). In fact, the Ohio Supreme Court has warned that courts should "notice plain error with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Put a different way, the appellant must demonstrate that without the error, the "outcome of the trial clearly would have been otherwise." *Id*. at paragraph two of the syllabus.

{¶ 27} There was no manifest injustice here. Walker's conviction was based on sufficient evidence; the outcome would have been the same whether or not the comments were made. The second assignment of error is overruled.

IV.    **Post-Release Control Advisement**

{¶ 28} In her third and final assignment of error, Walker asserts – and the State concedes – that the trial court erred when it failed to properly advise her regarding post-release control (PRC). While the record demonstrates that she was given many of the requisite advisements, the trial court did not advise Walker that a violation of the terms of her PRC could result in more restrictive sanctions, a longer period of supervision, or that she could be sent back to prison even if she had completed her prison time. *See* R.C. 2967.28(F). Accordingly, Walker's third assignment of error is sustained.

## V.    Conclusion

{¶ 29} The judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded for resentencing as to post-release control only.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.