[Cite as *State v. Cunningham*, 2024-Ohio-888.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

MICHAEL JOSEPH CUNNINGHAM,

        Defendant-Appellant.

CASE NO. 2023-A-0039

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00554

---

# O P I N I O N

Decided: March 11, 2024
Judgment: Affirmed

---

*Colleen M. O'Toole,* Ashtabula County Prosecutor*,* and *Matthew J. Hebebrand,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Malcolm Stewart Douglas*, 113 North Chestnut Street, Jefferson, OH 44047 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Michael Cunningham, appeals from his conviction for Aggravated Assault, a fourth-degree felony in violation of R.C. 2903.12(A)(1). Appellant has asserted one assignment of error, arguing that trial counsel rendered ineffective assistance of counsel by failing to file a Crim.R. 12.2 Notice of Self-Defense and failing to properly assert a claim of self-defense.

{¶2} Having reviewed the record and the applicable caselaw, we find appellant's assignment of error is without merit. Trial counsel did not render deficient performance.

In a separate, concurrent Felonious Assault case where appellant was represented by the same counsel, his counsel filed a Crim.R. 12.2 Notice of Self-Defense but chose not to do so in this case. Second, appellant's statements to police on the night of the assault and testimony from appellant's witness were in conflict and likely incompatible with a meritorious self-defense claim. Finally, appellant's trial counsel argued for a lesser included offense of Aggravated Assault, and it is not an unreasonable trial tactic to pursue a defense seeking a conviction for a lesser included offense to the exclusion of a complete defense such as self-defense to avoid confusing the jury.

{¶3} Therefore, we affirm the judgment of the Ashtabula County Court of Common Pleas.

**Substantive and Procedural History**

{¶4} On November 3, 2022, appellant was indicted on one count of Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1).

{¶5} The State has noted that appellant was also indicted for a separate Felonious Assault offense in 2022 CR 514 on the same day relating to an incident with a different victim. Appellant had the same counsel in both cases, both proceeded to arraignment on the same day, and both were originally scheduled for the same trial date of March 3, 2023.

{¶6} In the present case, on February 23, 2023, appellant's trial counsel filed a "Response to Trial Management Order." On the same date, in 2022 CR 514 the same trial counsel filed a "Response to Trial Management Order" and also filed a "Motion for Leave to File notice of Self Defense" and a "Rule 12.2 Notice of Self Defense." The trial court granted the motion for leave to file.

2

Case No. 2023-A-0039

{¶7} Both jury trials were continued to April 28, 2023. On the trial date, the State elected to proceed to trial on the present case. The following summarizes the testimony and evidence:

{¶8} Sergeant Scott Daniels, of the Ashtabula County Sheriff's Office, testified that he was dispatched to The Inn at West Andover for an assault report. He arrived at 2:52 a.m. and found Maynard in the restroom with a blood-soaked towel against the back of her hair. He said Maynard had blonde hair and it was soaked red from blood and he identified a one-inch laceration on her head. He also noticed a large lump on the left side of her face that was beginning to form a bruise and a scratch on her chin. He later identified blood spots in the parking lot.

{¶9} Daniels' investigation revealed that appellant arrived at the bar around 1:30 a.m. While there, an altercation began with an unidentified male and bar employees separated them. At closing time, appellant and Maynard left the bar and the assault occurred.

{¶10} Daniels went to appellant's house after the incident to interview him. Appellant told Daniels that Maynard had called him names at the bar, that when they went outside, she jumped on his back and pulled on his hoodie. He said several people pulled her off of him.

{¶11} Maynard testified that she was at The Inn with her niece on July 9 and into the morning of July 10, 2022. She said that she was acquainted with appellant because she had bought a car and scrap from him. Maynard said that when he arrived at the bar, he began making comments about sleeping with her to other bar patrons. She asked him why he had made those comments and appellant responded, "I haven't yet, but I'm going

3

to." She said he continued to be "ignorant from that point on." She said he tried to pick her up off the bar stool and also sprayed her niece with cologne.

{¶12} Maynard said the bartenders told appellant he needed to leave, appellant objected, and instead of leaving he went to the other end of the bar. She said appellant became ignorant with someone else and then the bartenders made him go outside. Maynard testified that she left the bar about an hour later. Her niece left through the front door while she left through the side door.

{¶13} She said that when she left, she saw appellant standing by the door and he made rude comments to her. She said they exchanged words briefly and she turned her back to him to walk away. Maynard denied ever jumping on him. She said appellant approached her from behind and she grabbed around at him and caught his hoodie drawstrings in her hand. She said that was when appellant hit her, knocked her out, and that from that point, she did not remember what happened until the police arrived. She said she went to the hospital and was diagnosed with a concussion, a fractured eye socket, fractured jawbone, and received 10 staples in the back of her head.

{¶14} On cross-examination, Maynard denied calling appellant a "n*****." However, when pressed, she said she did not "remember calling him a n*****" and said "I don't think that I did. * * * I don't think that if I did [call him that,] that would justify him breaking bones in my face either."

{¶15} The State rested and appellant called one witness on his behalf.

{¶16} Darin Knierman testified that he is acquainted with appellant. He said he was at the bar during the evening and did not notice appellant cause any issues or do any of the things Maynard described. He said he went to the parking lot around 2:15 a.m.

4

and soon after saw a "kid" talking about wanting to fight with appellant. This caught Knierman's attention, and he watched as the kid went into the front door of the bar. At the same time, appellant exited the side door of the bar without encountering the kid. Knierman said that Maynard came out from the bar about one minute later.

{¶17} Knierman said that when Maynard came out, she started "barking stuff in [appellant's] face, like right from the get." He said he could tell it was "an aggressive tone, but I couldn't make out words." He saw appellant push Maynard back and said she "came right back at him." Knierman said that this was when appellant struck Maynard one time and she fell to the ground. On cross-examination, Knierman said that it would be a lie if someone said Maynard jumped on appellant's back and started punching him.

{¶18} The trial court gave an instruction on the lesser included offense of Aggravated Assault.

{¶19} In closing, the State argued appellant's statement to the police that Maynard jumped on his back was at odds with Knierman's testimony that Maynard charged at appellant. The State offered that neither appellant's statement to Daniels, nor Knierman's testimony was credible, and argued that Maynard was the one telling the truth.

{¶20} Appellant's trial counsel highlighted the cause appellant would have to be under the influence of sudden passion or in a sudden fit of rage at Maynard. Counsel noted that Maynard never denied calling appellant a "n*****" and said calling someone that "is just about the most vile word in humanity. And if someone accuses you of saying it you say, I absolutely did not say that. I don't use that word. That never would have come out of my mouth. That's not what she said though."

**{¶21}** The jury found appellant not guilty of Felonious Assault, and guilty of the lesser included offense of Aggravated Assault, a fourth-degree felony in violation of R.C. 2903.12(A)(1).

**{¶22}** On June 14, 2023, the trial court sentenced appellant to 17 months in prison and to pay $20,805.96 to the victim in restitution.

**{¶23}** Appellant timely appealed, raising one assignment of error.

**Assignment of Error and Analysis**

**{¶24}** Appellant's sole assignment of error states:

**{¶25}** "[1.] Trial Counsel Prejudiced the Appellant by Failing to Properly Assert a Claim of Self-Defense According to the Criminal Rules."

**{¶26}** In reviewing an ineffective assistance of counsel claim, the standard we apply is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 11th Dist. Ashtabula No. 2006-A-0085, 2007-Ohio-4959, ¶ 49, quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 669. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A failure to "satisfy one prong of the Strickland test negates a court's need to consider the other." *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland*, at 697.

6

Case No. 2023-A-0039

**{¶27}** An appellant "must be able to demonstrate that the attorney made errors so serious that he or she was not functioning as 'counsel' as guaranteed by the Sixth Amendment, and that he was prejudiced by the deficient performance." *Story*, at ¶ 49, quoting *State v. Batich,* 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶ 42. Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007-Ohio-2372, at ¶ 42.

**{¶28}** Crim.R. 12.2 provides:

> Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, defense of another, or defense of that person's residence, the defendant shall, not less than thirty days before trial in a felony case and fourteen days before trial in a misdemeanor case, give notice in writing of such intent. The notice shall include specific information as to any prior incidents or circumstances upon which defendant intends to offer evidence related to conduct of the alleged victim, and the names and addresses of any witnesses defendant may call at trial to offer testimony related to the defense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted.

**{¶29}** R.C. 2901.05(B)(1) provides, in relevant part, "A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the

7

Case No. 2023-A-0039

person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *."

{¶30} "A self-defense claim includes the following elements: '(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶31} However, this case involved the use of nondeadly force. In such cases, there is no requirement that a person retreat to avoid the danger, even if such retreat is possible. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 43 (11th Dist.).

{¶32} Under R.C. 2901.05(B)(1), "[i]f, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence," the State has the burden of persuasion to disprove at least one of the elements of self-defense beyond a reasonable doubt. R.C. 2901.05(B)(1); *Petway* at ¶ 55. "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger* at ¶ 26.

{¶33} It is a reasonable trial strategy to argue self-defense and not request an instruction on an inferior degree offense or lesser included offense." *State v. Baker,* 111

8

Ohio App.3d 313, 324, 676 N.E.2d 143 (10th Dist.1996); *State v. Wallace-Lee*, 2nd Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 60. The inverse is also true. A reasonable trial strategy might be to not argue for a complete defense and instead argue for a lesser included offense.

{¶34} Here, the record demonstrates that trial counsel made a strategic decision to not pursue a self-defense claim. First, the State aptly notes that in a separate, concurrent Felonious Assault case with the same trial counsel, appellant's counsel sought and obtained leave to file a Crim.R. 12.2 Notice of Self-Defense. Trial counsel was aware of the Criminal Rules and made a decision to pursue a self-defense claim in one Felonious Assault case while not doing so in the other concurrently scheduled matter. Further, counsel sought and obtained leave to file the Crim.R. 12.2 Notice of Self-Defense in that other matter. This strongly suggests that counsel engaged in trial strategy and made a tactical decision not to pursue a self-defense claim in the present matter.

{¶35} Second, Daniels testified that he interviewed appellant and appellant claimed that Maynard jumped on his back and was hitting him. However, Knierman's testimony was at odds with this claim. Knierman specifically denied that Maynard jumped on appellant and said that she got in appellant's face, that he pushed her away, and that she charged at him before appellant struck her. These conflicting accounts were likely incompatible with a meritorious self-defense claim.

{¶36} Finally, appellant's trial counsel successfully argued for a lesser included offense of Aggravated Assault, and heavily relied on Maynard's failure to deny calling appellant a "n*****." Such evidence, if believed by the jury would be compatible with a conviction for Aggravated Assault but would not be compatible with a complete defense

9

such as self-defense. Further, choosing one theory of the case to the exclusion of another is reasonable trial strategy to avoid confusing the jury.

{¶37} Accordingly, appellant's sole assignment of error is without merit.

{¶38} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2023-A-0039