[Cite as *State v. Pennock*, 2024-Ohio-6117.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0021 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| KENYANA M. PENNOCK, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 00892 |

**O P I N I O N**

Decided: December 31, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Kenyana Pennock ("Pennock"), appeals the order of the Trumbull County Court of Common Pleas convicting her of Murder, a first-degree felony, Felonious Assault, a second-degree felony, and Reckless Homicide, a third-degree felony. For the following reasons, we affirm.

{¶2} This case stems from an incident that occurred on November 6, 2022. After witnessing her brother beaten and left unconscious outside of a bar, Pennock drove her vehicle with one of the assailants, Jesaree Harris ("Harris"), on the hood of her car at a speed of 50 miles per hour. After a series of speeding up and slowing down, Harris fell

from the hood of Pennock's car and onto the pavement. Harris later died from injuries caused by that fall.

**{¶3}** A trial was held on January 16, 2024. Sergeant Trevor Sumption ("Sgt. Sumption"), Detective Nicole Smith, Detective Eric Laprocina, Katrina Artis ("Artis"), Alison Krywanczyk, M.D., Darryl Pennock ("Darryl"), and Pennock testified.

**{¶4}** Pennock described the night of the incident. Pennock testified that earlier in the evening she went to a birthday party with co-workers and had a single "cooler" while she was there. Pennock testified that afterwards, she came home and went to bed. Sometime between 10:00 p.m. and 11:00 p.m., Pennock's brother, Darryl, called her and asked her to come out to the bar with him and their cousin. Pennock met Darryl at the bar, ParkPlace Tavern, in Warren.

**{¶5}** Darryl had recently been paid and had around $5,000 in cash on him that night. Pennock testified that when she arrived at the bar, Artis and a cousin named Chardonnay were there, along with other people Pennock and Darryl knew. Pennock said that Darryl was buying drinks for their cousins at the bar, when she noticed some of her other cousins staring at Darryl. During the night at the bar, Artis danced with Darryl, and a woman approached her and said "B, get off my man." A fight ensued between Artis, and two other women, Mika and Tasha. Artis then asked Pennock to go outside to talk. Pennock testified that before this interaction, she did not know Artis.

**{¶6}** Darryl and Pennock exited the bar. Pennock testified that someone named Marchell, Kvionna, and Kvionna's boyfriend, along with a friend of Kvionna's boyfriend, a woman named Tamaralyn ("Lyn"), and Harris all came outside. Artis testified that Lyn was Harris's sister. Pennock testified that Kvionna told her she's "the op." Pennock explained

2

that "the op" means an enemy. Pennock said that Lyn and Harris were angry because they believed Darryl killed Kvionna's father, Kevin Daniels.

{¶7} A brawl broke out outside the bar, and Darryl was attacked by multiple assailants. Harris and others were beating Darryl, yelling "Kill that N . . . r." Artis testified that around ten people were involved, all fighting Darryl. Pennock opened her trunk to get the attention of the people beating Darryl, but it did not deter them. Pennock saw Darryl on the ground, bleeding and unconscious. She attempted to carry him away, but he was too heavy. The fight ended, and Pennock testified that Harris walked within a few feet of her but made no attempt to attack her.

{¶8} Pennock testified that she believed Lyn, who was still in the parking lot sitting in her car, had a weapon, so Pennock drove her car into Lyn's car to "get her out of there." After making a U-turn either in the road or a neighboring parking lot, Pennock testified that Harris hopped onto the hood of her car. Pennock testified that she told the police she saw Harris run into the street and block traffic. Pennock said, "Jesaree, I don't know where she came from, was right there. I hit my brakes for me not to hit her."

{¶9} Pennock testified that she drove the car then slowed down multiple times to attempt to get Harris off the hood of her car. Pennock said that she was chased by two cars during the incident. Pennock said that she drove up the street, with Harris on the hood, and intended to take Harris to the police station. Pennock admitted to lying to police officers when they interviewed her. Pennock had at first told them that she stopped the vehicle and Harris got off the car. Pennock further testified, "when I was driving, she did, like, slide off."

Case No. 2024-T-0021

{¶10} Dr. Alison Krywanczyk, M.D. ("Dr. Krywanczyk") of the Cuyahoga County Medical Examiner's Office, performed Harris's autopsy and testified to Harris's autopsy photos. At the hospital, before Harris's death, doctors removed a portion of her skull to relieve pressure from the buildup of blood around her brain (called a subdural hematoma). Dr. Krywanczyk explained that subdural hematomas "are almost always caused by trauma and blunt force injuries." Dr. Krywanczyk testified that the injuries Harris displayed were consistent with injuries she would expect someone to obtain if they were thrown from a vehicle traveling in excess of 50 miles per hour and then striking the pavement.

{¶11} Dr. Krywanczyk also testified to other injuries Harris had, namely bruising on Harris's right leg. Dr. Krywanczyk explained that Harris had a fracture of her tibia under the bruising. Dr. Krywanczyk stated, "So Ms. Harris had a very distinctive type of tibia fracture. It's sometimes called a butterfly fracture or a wedge fracture. And it's a type of injury that we see almost exclusively in pedestrians who are struck by motor vehicles when they are standing."

{¶12} Sgt. Sumption's body cam, Pennock's police statement, Pennock's 911 call, security footage from ParkPlace Tavern, Warren police street cam footage, crime scene photos, autopsy photos, and a vehicle speed analysis were all admitted into evidence. Video from ParkPlace Tavern was played for the jury showing the fight that broke out with patrons at the bar and Darryl. Footage was also shown of Harris's body colliding with Pennock's red Dodge Dart vehicle, and then of Harris on top of the hood of Pennock's car as Pennock accelerated her speed and drove away from the bar. Pennock was convicted of murder and sentenced to 15 years to life in prison.

4

## Assignments of Error

{¶13} [1.] "The trial court erred and abused its discretion by failing or refusing to give defendant-appellant's requested jury instruction on self-defense, and/or defense of others, at trial."

{¶14} [2.] "The evidence was insufficient to support the jury's verdicts of 'guilty' with respect to the charged offenses of murder, felonious assault nd (sic) reckless homicide. Where the state failed to establish the required *mens rea* elements of those offenses."

{¶15} [3.] "Defendant- appellant's convictions as to all counts were against the manifest weight of the evidence, where the state failed to establish the required *mens rea* elements of those offenses."

## Self-Defense Jury Instruction

{¶16} An appellate court reviews the trial court's decision to give or not give a jury instruction under an abuse of discretion standard. *State v. Jordan*, 2009-Ohio-6152, ¶ 30 (11th Dist.), citing *State v. Kidd* 2007-Ohio-6562, ¶ 42.

{¶17} "A self-defense claim includes the following elements: '(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Cunningham*, 2024-Ohio-888, ¶ 30 (11th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 14.

5

Case No. 2024-T-0021

**{¶18}** To receive a requested jury instruction, the defendant must introduce evidence that if believed, would cause reasonable minds to question the existence of the defense. "If a requested instruction in a criminal case is legally correct and pertinent to evidence in the record, the trial judge must include it, or the substance of it, in the jury charge. *State v. Rivers* (1977), 50 Ohio App.2d 129. The standard to be applied in determining whether the defendant has successfully raised an affirmative defense is whether or not he has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such an affirmative defense. *State v. Melchoir* (1978), 56 Ohio St.2d 15." *State v. Gunther*, 1987 WL 8231, at *1 (11th Dist. March 20, 1987).

**{¶19}** To raise such a defense here, Pennock bore the burden of producing legally sufficient evidence that her use of force against Harris was in self-defense. "'[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense,' i.e., 'if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *State v. Csehi*, 2024-Ohio-779, ¶ 22 (11th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 25.

**{¶20}** Further, the defendant must show that their belief of imminent death or great bodily harm was objectively reasonable under the circumstances. "The second element of self-defense requires a defendant to show that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of

6

escape was the use of deadly force. . . . The person's belief must be *objectively reasonable* under the circumstances and he must subjectively believe he needed to resort to force to defend himself." *State v. Bundy*, 2012-Ohio-3934, ¶ 54, citing *State v. Thomas*, 77 Ohio St.3d 323, 330-331. (Emphasis added.)

{¶21} Pennock argues that recent changes to Ohio's Castle Doctrine eliminating a duty to retreat are applicable. R.C. 2901.09(B) states, "*[A] person has no duty to retreat before using self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be."

{¶22} R.C. 2901.05(B)(2) provides:

> [A] person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

{¶23} The conduct and location of the victim must be considered at the time the defendant claims to have acted in self-defense. "In order for a defendant to receive the benefit of a jury instruction on the presumption contained in R.C. 2901.05(B)(2), the trial court must focus on the conduct and location of the victim at the time the defendant claims to be acting in self-defense." *State v. Estelle*, 2021-Ohio-2636, ¶ 16 (3rd Dist.).

{¶24} Here, the fight that ensued outside of the tavern was not with Pennock. Harris had been fighting with Darryl, who was on the ground, unconscious. The fight had concluded when Pennock left the parking lot, turned around, and returned. Harris was walking in front of Pennock's car, Harris struck Pennock, and then Pennock accelerated in speed with Harris on top of the car. The video and testimony do not show that Harris

7

attempted to enter Pennock's vehicle. There is no indication that Harris was targeting Pennock to further engage. The fight with Darryl had subsided, and none of the testimony indicated that any of those individuals were attempting to further engage in a fight with Pennock. The target of the fight was Darryl. "An actor is legally justified in using force only when the person he is aiding would have been justified in using force to defend themselves." *State v. Kovacic*, 2012-Ohio-219, ¶ 16 (11th Dist.), citing *State v. Wilson*, 2009-Ohio-525, ¶ 38 (2nd Dist.). The evidence in the record shows Pennock was at fault for creating the circumstances that led to Harris's death and that Pennock was not protecting Darryl at that point. When Pennock hit Harris, she testified that she had already seen her brother lying on the ground injured, that the fight was over, and people were leaving. Further, nothing in the evidence suggests that Pennock was protecting herself or others when she sped down the road with Harris on top of her vehicle. Pennock did not testify that Harris made any attempt to enter the vehicle.

{¶25} Accordingly, the trial court did not abuse its discretion by not giving a jury instruction on self-defense.

{¶26} Pennock's first assignment of error is without merit.

**Manifest Weight and Sufficiency**

{¶27} Sufficiency of the evidence and manifest weight are interrelated, yet distinguishable, and accordingly will be analyzed together.

{¶28} ""Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 23, quoting *Black's Law Dictionary* 1433 (6th Ed. 1990). "An appellate court's

8

function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, (1991), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶29} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, at ¶ 24. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶30} Pennock contends that the evidence was insufficient to meet the mens rea elements of murder, felonious assault, and reckless homicide.

{¶31} Pennock was found guilty of murder, in violation of R.C. 2903.02(B) and (D), which provides:

9

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . ..

(D) Whoever violates this section is guilty of murder . . ..

{¶32} To be found guilty of murder under R.C. 2903.02(B) it must be found that Pennock caused the death of another proximately while committing or attempting to commit a violent first or second-degree felony. Harris died due to injuries she sustained from the fall brought on by Pennock driving her vehicle with Harris on top of it. Pennock was found guilty of felonious assault, a second-degree felony, and a violation of 2903.11 (A)(2) and (D)(1)(a), which provides:

(A) No person shall knowingly do either of the following:

. . .

(2) Cause or attempt to cause physical harm to another or to another's unborn baby by means of a deadly weapon or dangerous ordnance.

(D)(1)(a) Whoever violates this section is guilty of felonious assault.

{¶33} Pennock testified that she sped up and hit her brakes repeatedly in an attempt to get Harris off the hood of her car. The ParkPlace Tavern security footage showed Pennock driving her vehicle, Harris walking in front of Pennock's vehicle, Pennock hitting Harris, and Harris landing or moving on top of Pennock's hood. At no time did Pennock stop. Pennock slowed down, but when Harris appeared to mount Pennock's hood, it is unclear if she was pushed atop by the force of Pennock making contract with the vehicle or if Harris jumped on top or a combination of both. However, at the point that Harris is on top of Pennock's vehicle, Pennock accelerated the speed and drove off.

10

{¶34} R.C.2903.11(A)(2) prohibits someone from knowingly causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordinance. R.C. 2923.11(A) provides:

> (A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

{¶35} "Ohio caselaw is replete with examples of vehicles being considered deadly weapons. *See State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527; *State v. Evans*, 10th Dist. Franklin No. 01-AP-1112, 2002-Ohio-3322, ¶ 22 ('an automobile may be classified as a deadly weapon because it is capable of inflicting death[.]'); *State v. Bauman*, 7th Dist. Columbiana No. 17 CO 0016, 2018-Ohio-4913 ¶ 28 ('[A] vehicle is a deadly weapon when the offender uses it in a manner likely to produce death or grave bodily harm.'); *State v. Sepeda*, 6th Dist. Lucas No. L-21-1123, 2022-Ohio-1889, ¶ 42 (a motor vehicle deliberately used to strike an individual is a deadly weapon)." *State v. Walker*, 2023-Ohio-4690, ¶ 21 (2nd Dist.).

{¶36} R.C. 2901.22(B) defines knowingly:

> (B) A person acts knowingly, regardless of purpose, when the person is aware the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶37} To meet the elements of felonious assault it must be shown that the defendant acted knowingly to attempt to cause physical harm with a deadly weapon. Dr.

11

Case No. 2024-T-0021

Krywanczyk testified that Harris's injuries were consistent with those found almost exclusively with individuals struck by motor vehicles. The State played surveillance video for the jury showing Pennock drive away from the tavern, turn around, and then come back to the tavern's parking lot. When Pennock returned, Harris could be seen on the video walking in front of Pennock's moving car. Pennock's car slowed but did not stop when it made impact with Harris. Instead, when Pennock hit Harris, Harris went onto the hood, and Pennock accelerated in speed, reaching at least 50 miles per hour. Pennock testified, and it could be seen on video played for the jury, that Pennock slowed down and sped up multiple times while Harris was on top of the hood. Blood was found on Pennock's vehicle, before the fall, indicating that Harris had injuries from the impact of Pennock's vehicle hitting her. The testimony, combined with the video, was enough to establish the knowingly element of felonious assault.

{¶38} Pennock was also found guilty of Reckless Homicide, a violation of R.C. 2903.041(A) and (B) which provides:

> (A) No person shall recklessly cause the death of another or the unlawful termination of another's pregnancy.
>
> (B) Whoever violates this section is guilty of reckless homicide * * *.

{¶39} R.C. 2901.22(C) provides:

> (C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

12

{¶40} Surveillance video from outside of the tavern showed Pennock driving up to and hitting Harris. Pennock did not stop her vehicle. Instead, she drove down the road with Harris on top of her hood, braking and accelerating at a speed of 50 miles per hour. Harris died as result of the injuries she sustained falling from Pennock's vehicle. Once Harris was on top of Pennock's hood, she had any number of options other than to accelerate in speed and try to throw her off. Pennock's own testimony indicated it was her intention to try and get Harris off of the hood of her car. When Harris did come off the car, she fell to the pavement causing injuries so severe that she ultimately died from them.

{¶41} There was sufficient evidence for the jury to conclude that Pennock acted recklessly and that her actions ultimately lead to the death of Harris. Further, there was sufficient evidence to fulfill the mens rea requirements of her convictions.

{¶42} Based on the overwhelming evidence presented at trial, described above, the testimony of Dr. Krywanczyk, Pennock, Artis, and Darryl, as well as the videos of both the fight, Pennock hitting Harris in the parking lot, and Harris falling form Pennock's vehicle onto the pavement, there was enough that a jury could reasonably conclude Pennock's guilt beyond a reasonable doubt. Accordingly, it cannot be said that the jury clearly lost its way.

{¶43} Pennock's second and third assignments of error are without merit.

{¶44} For the foregoing reasons, the decision of the Trumbull County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-T-0021